9.806 Police Pension Fund of the Village of Tinley Park v. Kocek Good morning, Justices. My name is Richard Reamer. On behalf of the Defendant Epeline of the Tinley Park Police Pension Board, are you ready for me to proceed? I'd like to reserve whatever brief rebuttal time that's necessary. May it please the Court, Counsel. As you know, this case started back in January of 2006 when Commander Kocek retired from the Tinley Park Police Pension Fund, my client. When he retired, he left open the possibility of a retroactive salary increase. Nothing improper about that. There's rules and regulations that's done on a routine basis. In April 26 of 2006, there was an email that I think is telling. The email was from the Village Manager, Niehaus, to Commander Kocek. This document was not shared with the pension fund until after October 17 of 2006. In that email, Mr. Niehaus says, Therefore, you will receive a retroactive paycheck for the two weeks you were on the payroll in early January. Better yet, your retirement salary for pension purposes will be changed accordingly as your existing salary of record was $85,000. I am meeting with other commanders tomorrow. They will be receiving different wages increased based upon their years in the position. I am not sure how well this will go over. We will have to see. Finally, Mr. Niehaus, the Village Manager, says, Stop. Pinch yourself. Once you get up off the ground, please give me a call if you have any questions. After that, again, that was not known to the Board until after October of 2006. On May 17th... Well, when you say it's not known to the Board, let me quote, in which case it's the Rossler case? Yes. Where the Court pointed out that nothing occurred that would have prevented the Board from finding out more information. Why shouldn't the Board be responsible for failing to look into it or failing to confirm the representations that were made of it? Very fair question, Your Honor. I will tell you this. Prior to that, I'm familiar with the Rossler case. My partner, Dick Pichelski, actually tried that case. This is a different scenario with Rossler. I'm talking about the observation that the Rossler Court made where it said that why should it allow the Board to reopen final decisions simply because it failed to verify the accuracy of information. There is certainly something similar that occurred here. With all respect, I think it's different, but here's what was done prior to May 17, 2006, in which the Pension Board held a meeting, not a hearing, increasing the plaintiff's pension benefits. Before the Pension Board meeting, the President of the Pension Board tried to do a number of things. The Pension Board spoke to the Village Treasurer to try to verify the amount. He was told the salary was $94,547. He was also told that all the other commanders, two other, would receive the same amount of increase as the plaintiff, so he attempted to verify that information. In addition, he also spoke individually to the two other commanders to verify what their salary would be. The commanders would not tell them that information. It would not divulge the amount, but confirm that there would be retroactive salary increases. So are you saying that basically the Board did everything within its power to find out and the information simply wasn't available? No, I believe that the information was deliberately not tendered to the Pension Board. I think the Board did what the practice was at the time, which is to take the villages and the village officials' word for what the salary increases were. Now remember, when a police officer retires, it happens all the time. Typically what happens is there's documents, they take it at face value. I guess the point, Your Honor, is that the Board had no reason to suspect at this time there was anything possibly improper with the amount of the salary. Let's get on to some of the legal issues. I know you cite Justice Hoffman's opinion as modifying Rossler, and correctly so, regarding arithmetical errors, but both courts seem to assert that there was a lack of jurisdiction on the Board to reconsider its decision. How do we get around a lack of jurisdiction to the extent that both cases are so whole? Well, I think I really believe, and you're correct, that both the trial court and the plaintiff did rely heavily on Rossler, but I think as the Kazakowski case and the First District case you referred to cited, Rossler was a very limited case. And I think the bottom line here is that what happened is that Rossler did not involve any allegation of fraud or misrepresentation. Rossler was basically the Board allegedly made an arithmetical error. And as you recall, what the court said in Kazakowski, I believe Justice Hoffman said that what happened there was that they improperly grafted the term arithmetical error in the definition of 3144.2, the provision that's at issue here. Now, similarly, nowhere in 3144.2 of the Pension Code is there any requirement that only the claimant has to be guilty of fraud, misrepresentation, or error. So I think it follows the logic of Kazakowski. I think it follows that there was no way at the time for the Board to possibly know that there was possibly something going wrong with the arithmetical error. Did Justice Hoffman say that there was no jurisdiction on the part of the Board to reconsider?  All right. And how do we get around that assertion if that is the holding of that court? I think I believe that's easy to do in light of the fact that if you look at that 35-day time limit is not an absolute. With all rules, there's exceptions. Well, then what did Justice Hoffman mean when he said there was no jurisdiction if he wasn't referring to that 35-day time period? I believe my reading of his opinion was that what he meant was, in this case, he recognized that the Rossler Court improperly put in language that didn't exist. That has nothing to do with jurisdiction. What is jurisdiction? Jurisdiction is, does the Board have the legal authority to do it? And why would the Board not have legal authority to do it? I'm sorry, Justice? Why would the Board not have legal authority to do it except for the expiration of that 35-day period? I think that 3144 is the exception to the 35-day rule, and I think what the legislature intended for good reason. So was Justice Hoffman wrong in his assertion that the Board did not have jurisdiction to reconsider? Not in the Kazakowski case, because they said that it was error on behalf of the Board. Well, let me suggest this, that jurisdiction doesn't turn on facts, or at least not that I'm aware of, unless there's a case that you cite. And to the extent, you can't distinguish Justice Hoffman's decision based on the facts. And it's a legal issue, isn't it? Jurisdiction, isn't that a legal issue? Jurisdiction is a legal issue. So how do we get around his statement that there was no jurisdiction? I think you get around it when you look at the plain, unmistakable language of the statute. Surely the legislature didn't intend. Do you think Justice Hoffman looked at the plain, unmistakable language of the statute? I believe he did when he reached his conclusion, but I think it's a different factual scenario. There we go. We're going into the facts, and that's what I'm saying. Isn't that a legal question? Well, yes, it is, and I think that's why the standard on review here is de novo, which allows you to basically look at everything and look at the facts. So, again, fair question. How do you get around the 35-day limitation in administrative review? I don't believe that 3144 limits. In fact, I think 3144.2 is the exception to that 35-day rule. And I think that if you look at it, there's no other way that a pension board, unless they do a full-blown evidentiary hearing before granting a pension, they can address things that were raised by this issue. Are we, in fact, reading that section to say that fraud, misrepresentation, or errors must be discovered within 35 days for the board to rectify? I believe that was an inference that the trial court made. Is there any such support for such a holding? I believe there is no support that the board has to conduct an investigation before granting a pension or conducting a hearing, or I don't think, and I think that's what this case is all about, does 3144.2 limit the board? At any time, if the board discovers fraud, the board ought to be able to go in. If it's fraud that's not committed by the applicant, I think that's what the trial court did, and that's what Justice Hoffman said is that the limitation. Isn't there a concern as well as to making it open-ended on the other side? Can the board, five years later, decide that it made an error, 10 years later, 20 years later? Judge, I think if the board did its due diligence and somehow information was kept from them, which it was. Are you saying a reasonable period of time? I believe a reasonable period of time. I don't think it would be fair for me to say open-ended, but again, what's the point? The point is anti-fraud. We all read in the paper about pension spikes and golden parachutes and things like that. 3144.2 was there for a reason. I think this is the reason. I don't think the trial court was correct in limiting it to a case where it's fraud or misrepresentation on behalf of the claimant. This is a new case. It's a case of first impression where the misrepresentation, the fraud, was, we believe, committed by another party. Secondly, I think the court was wrong when the court said you have to have proved fraud before a hearing. I think what that does is shifts the burden on you, and I think if you look at the Sedlak case, which is the third district case, which is a pension spike case, not a 35-day administrative review case, what the Sedlak court says, the proper place to determine what constitutes salary shouldn't be the courts. You don't want to be a super pension board. Otherwise, you'll be faced with thousands of these. I have two pending in this district right now involving pension spike cases, which is what this is really about. We think the best place, and we are not asking this court, and we are certainly not asking the trial court to make findings of fact as far as whether or not there was fraud. We believe there was significant evidence that a trier of fact, if we had been allowed to hold a hearing, that we possibly could have inferred fraud. Plaintiff's salary was made retroactive to January 1, 2006. Another commander's only got it retroactive to May 1, 2006. Plaintiff received $7,000 more than other commanders. The village manager, we believe, committed an ultravirus act. He gave a pay raise, a salary increase, in violation of the salary ordinance. The salary ordinance states, for both years in question, salaries will be in conformance with the schedule and shall not exceed those provided for in the budget. That's exactly what happened. Plaintiff's claim that he got more because of longevity, I think, is a red herring, because if you look at the same salary ordinance, the controlling document, there's already a provision for longevity for commanders. So I think that's a red herring. There's already what? A provision what? There's a provision in the salary ordinance because Plaintiff was a commander. He's not subject to a collective bargaining agreement, a labor contract, so there's a salary ordinance that sets parameters. I'm saying that the salary ordinance that governed Plaintiff when he retired was violated by the village manager. He exceeded the ordinance, and longevity was part of that, and that same document that establishes pay. You're saying that there was something there that's limited the amount of money that he could receive? Yes. Yes, Your Honor, I believe so. That he was not, the village manager could not give him the top salary? Yes. What? Yes, I do. It's the salary ordinance. The salary ordinance, which applies to all non-bargaining unit employees, including police commanders, the budget, not the budget document, but the salary ordinance, the official document by the village, didn't get in, wasn't enacted prior, I'm sorry, after commander left. It wasn't enacted until early May of 2006, and in that document, two important things. One, there's a salary range. The commander here got a salary range for the next budget year. If you look at the previous budget year, there was a provision for longevity. But he had reserved the retroactivity. He did reserve, and I don't have a dispute with that. It's the amount of retroactivity. If the village is allowed to do this and pick and choose, this is the greater public policy argument, if the villages are allowed to pick and choose who's going to get what, it's going to be chaos. It's not fair. Plaintiff certainly is entitled, by statute, what he's entitled to, based on his salary attached to his rank and his length of service. Nobody's trying to take anything away from him. In fact, contrary to... Certainly, he's in a different position from the other commanders, because he was at the end of his career. So, I mean, what was there to prohibit him from receiving the maximum? Then I think that's a salary spike. I think it violates the Illinois, our regulator, the Illinois Department of Insurance. They regulate your pension. They're the regulators. They have administrative rules and regulation in effect. There's things that are not considered salary. On page 5 of our brief, 50 Illinois Administrative Code, 4402.40, there's things that are not considered salary for pension purposes. One is compensation for an extraordinary deed or accomplishment, non-recurring in nature, and secondly, merit pay, compensation which is neither fixed in an amount or determined by reviewing bargaining agreement or pay plan, which we have here, nor added to the salary for determining future wages. At his deposition, the village manager said and admitted that he, being the plaintiff, would not have gotten the same salary increase that he did if he hadn't retired. You also need to look, I believe, at the definition of salary contained in Article III of the Illinois Pension Code. It says salary means annual salary including longevity, et cetera, established by the municipality's appropriation ordinance including compensation, et cetera, excluding overtime, holiday pay, or bonus. So here we think it was a bonus is what we refer to as a pension spike. Let me ask you, you referenced the depositions. There was a lot of discovery that ensued in the circuit court below. And you also referenced other cases that you've been involved with. And I want to know whether you've run across a case where administrative hearing has been enjoined to much like here. Are you equated with another case where administrative hearing has been enjoined where, you know, much of the same proceedings that would have occurred before the administrative hearing did, in fact, occur before the circuit court? I am the ones that are reported that are, yes, I am. There's the Sola-Rossler case, the Second District Appellate Court case. There's the Rossler case that we've cited. Well, the Rossler case, was that that they actually enjoined? They enjoined. Yeah, they enjoined the pension board from conducting a hearing based on that arithmetical error. That's the one I believe, again, my reading of Justice Hoffman's opinion in the Kozakowski case, I believe he limited or at least called into question that court's interpretation of the same thing we're talking about here. And finally, as I know you have all the briefs in front of you, I just want to respond to the argument raised by plaintiffs seeking sanctions against myself under Section 375B of the Illinois Supreme Court rules. This is a case of first impression. None of these cases in any of the briefs deal with facts involving commission of fraud or misrepresentation by a third party. And I'd also point you out to the trial court's decision on April 21, 2009, when counsel raised the Rule 137 sanctions. The court was very clear in its order that she did not believe that she could impose sanctions, that this was a good faith basis for the defense and the pleadings of the defendants. Given the penal nature of Rule 137, this motion does not establish a basis. So all we've really redone here is retooled the request for sanctions. I'd be happy to answer any other questions. As you know, the circuit court's judgment has to be shown to have been against the manifest weight of the evidence. And that burden can only be borne if the opposite result is clearly evident. And I'm trying to see why you believe that the circuit court's ruling that the board failed to show that the village misrepresented the facts which the board based its decision, why that was against the manifest weight of the evidence. Well, I think our argument was as well that it was legally erroneous, and I think we argued that it was arbitrary and capricious. We just think we believe that the court misinterpreted Section 3144.2. As we said before, there's no requirement that the claimant be the only one to participate in fraud or error or misrepresentation. Secondly, as you know, the court read in, there's no definition. But you said that the village had not misrepresented as well. I don't, quite frankly, I don't think that that is something that the trial courts or you should have to do. I think that's something that's properly at an administrative hearing to keep you from having to listen to me about arguments like that. I think what was contemplated here. The circuit court did allow for. Discovery. Discovery, exactly. And again, I'm glad that they did because it allowed us to develop the facts. But I think more importantly, the proper place to do that shouldn't be in front of you or the court. I think the most expeditious way and efficient for judicial economy, and I think what was contemplated here, was let the pension boards make the decision as to salary. Then that's subject to administrative review. That's what we tried to do. We did maintain plaintiff's benefits. He hasn't lost any pension benefits pending the outcome of this. And quite frankly, after all the smoke cleared, if we were allowed to hold an administrative hearing, it's up to that five-member board to decide whether or not there was fraud. I don't think, I think the court erred by saying we had to prove fraud ahead of time. I think that puts the cart before the horse. In fact, let me address that point because it seems to me that there is a tension between reviewing this preliminary or this permanent injunction under normal civil procedure code and the administrative review law that the case originally started as. Under the administrative review law, we don't review the circuit court at all. We review the agency. And yet here, the agency was precluded from making any kind of findings, which seems to take it out of the administrative review law procedure and into these code of, or civil code of procedure. And you wonder whether the administrative review procedure should trump in under, given the context of this case. Sure. And I, you know, I don't, Your Honor, I don't think that what the newest case was that the Supreme Court just came up and said that that 35-day rule is not carved in granite. And there was a case that came out after the, came out after the, we filed the brief. That was a First District case. Then you'd need to assign additional. I don't think, I don't think that the administrative review act at 35 days is absolute carved in granite. I think the case law and I think that the statute 3144.2 contemplates exceptions. And I agree that I see the dilemma there. You have to reconcile the two. But I think that's why the court, I'm sorry, that's why the legislature put in 3144.2 to give us the ability to do findings of fact and make conclusions. And then, clearly, the limitation, the remedy for the plaintiff, if he didn't like it, wouldn't be to come before the trial court, come before yourselves. It would be administrative review and then administrative review law would apply. I thank you for your time. And just possibly a brief rebuttal. I mean that. Thank you. L.A.? Good morning. I'm Thomas McGuire. I'm the attorney representing Joseph Kosack in this matter, who is physically present in the courtroom today, accompanied by one of the attorneys in my office, Yolanta Damisch. Understanding that the court has the briefs, has read the briefs, I'd just like to present some points for the consideration of the court. Let me start with the question I put to counsel, and that is does that section that we're addressing, 3144.2, mean if we adopt your position in this case, mean that any fraud misrepresentation or error must be discovered within 35 days, otherwise the board is out of any kind of recourse? The answer is yes, and the board had the opportunity to do so or did not do so. And what would you cite as authority for that position? I cite the Administrative Review Act because, as the court knows, the Administrative Review Act, you have 35 days in which to take them out of the court, dealing with the matter of jurisdiction. So let me, in fact, let me raise the point raised by the board, and that is under that reading of the act, does the board have to file an exception to its own ruling in order to invoke review by the circuit court? Yes, by, in effect, I wouldn't say an exception, but if there's any question about it, they could file a complaint for administrative review within 35 days. But they would file a complaint for administrative review of their own ruling? Yes. You don't find that as being a bit odd? Are you aware of any other context where a similar action is required of the board before it can correct its own mistake? Well, to put this in perspective, the pension board had the opportunity in May of 2007 not to act on the salary, retroactive salary increase of Joseph Kosak. They did act unanimously. They approved it. They didn't have to in May of 2007. What additional information do you think the board was looking for if they didn't approve it? If they got all the information and it accepted as true that they needed to make a decision, why wouldn't they make a decision? I mean, you say they could have put off that decision, but put it off for what purpose? To get more information? Where would they get that information from? That was up to the pension board, but obviously they could have gone to the village manager because the village manager was the person in charge of this salary study commissioned through NIU. You mean May of 2006, right? I'm sorry, please. You meant May of 2006, correct? You kept saying 7. You're correct. Thank you. And I'd just like to ask you one question because you said they could go to the village board manager. Village manager. But isn't he the person who gave them all of the information that they relied on for the May 2006 decision? And not all of it, obviously, clearly. Well, here what happened was the village treasurer is a non-voting member of the pension board. And about five days before the May decision to increase the pension of COSAC, the treasurer gave information at the request of the pension board to the pension board and basically said to the best of his knowledge, here's what it is. Now, the pension board didn't act any further on that. We're talking about the NIU study. It's the village manager form of government. The pension board president, a fellow by the name of O'Hearn, deals with the manager all the time in the sense of labor relations. The bottom line is that the village, I should say the pension board president, could have gone to the manager. They could have subpoenaed the manager. They could have asked them questions. But they didn't do any of those things until November. November after they have increased the salary of Joseph COSAC. So the person to whom they should have gone if there was a problem happened to be the village manager. They didn't do so. But the argument, of course, for the other side is that they weren't aware of, I certainly wouldn't call it fraud, but possibly a lack of informing them of everything until sometime in October when they found out that the other commanders had gotten significantly less than Mr. COSAC. And then they wanted to look at it again in November. And that's why they informed Mr. COSAC that they were going to look at his pension again. And your question specifically is what, please? I had said earlier, you're saying that they had to do this. I think my point is this, and it relates to Judge Garcia. Your position is that they have to discover something within 35 days. What else could they have done? If their practice is to rely on what the manager says to them and their treasurer, then once they discover something is wrong. If they discover it in two or three months or four or five months, you're saying they don't have a right to go back and look when they may have been, had something misrepresented to them. And I say that because it doesn't say in the statute at any time where there's been a misrepresentation of fraud or an error. In effect, what the pension board is asking this court to do is to legislate. That's a function, obviously, of the General Assembly. This Rossler case that's been on the books for a number of years, if there was any question about Rossler being inappropriate, improper, that matter could have been addressed to the Illinois General Assembly and they could have put the words into the statute at any time. If you find an error or misrepresentation at seven, you can reopen the matter. Those words were not put into the statute. In effect, what the pensions board is asking this court to do is to legislate. Hopefully that answers your question. Let me ask you regarding what the procedure would have been. Well, let me start with going into the circuit court and seeking to enjoin an administrative hearing by the pension board. And would you accept that the pension board might serve at least a couple purposes in pursuing an administrative hearing to find out what happened here and who's at fault or where the information should have come from as being one such purpose, as well as possibly correcting it there? And why shouldn't the pension board be allowed to pursue an administrative hearing for that very purpose, to find out what happened, to find out, you know, who misled whom and what we need to know to make sure it doesn't happen again? Why should we think that an enjoinment, you know, to enjoin, to give an injunction, why is that the proper remedy in this case when it sort of serves to exclude information that should be made public? Besides, and as I think the board has said, you know, it's a distinct question as to whether or not there should be any relief put against the plan. We have a conflict between two portions of the pension code. One portion is that portion dealing with fraud, misrepresentation, and error. The other portion of the pension code is that portion which adopts the Administrative Review Act. Once again, I go back to the point that the pension board in May didn't have to act in May on that which they had received. They could have done due diligence in the sense of trying to find out the rest of the information dealing with the NIU study. It's because of the failure of the board to file a complaint for administrative review within 35 days with the circuit court under the Administrative Review Act, because under the Administrative Review Act, there's a provision that says that the court can remand the matter back to the administrative agency. For additional information. They didn't do that. Well, let's address that additional information, because it seems, and we brought it up during the first argument by the appellants, that there are certain functions or certain roles the administrative agency plays and the circuit court plays. And the administrative agency is one of the fact-finding body. The circuit court is not. And why should that be tossed out of this case entirely? You know, why shouldn't a remand have been, why shouldn't the court have remanded this case to allow the administrative agency to carry out its responsibility and come up with certain facts and then allow the court at that point to either accept those facts or disregard them? I believe the circuit court based this decision upon Rosler, the 35-day time limit, and that was the ballgame. Well, did she also decide that there was, in fact, no fraud, misrepresentation, or error such to trigger Section 3-144.2? And is that a proper function of the circuit court? And I consider it to be because I didn't ask for discovery. The pension board is the one who wanted to conduct depositions. And once that occurred, that put me in a position, now I have to act. So they opened the door, if you will. I had to go through the door with them. But you can see that under the Administrative Review Act, if this had been a pure review of a proceeding from the administrative, or under the Administrative Review Act, no discovery would have ensued in the circuit court. That is correct. I think, quite frankly, the circuit court was doing its job and being very equitable to all parties by saying to the pension board, if you want to conduct, you're asking me for permission to conduct discovery. I give you that permission. Go to it. So she could have made this ruling without. Is that what you're saying? She could have, but she did not. She went the extra step. But she could have, on her own, have decided that because this did begin as an administrative proceeding, that I'm going to remand to the pension board for such findings and not allow the parties to present those findings for me, because in the context of an administrative review, I don't engage, in fact. Agreed. But once again, we run into the 35-day time limitation. And once again, the pension board made its decision in May of 2007. And it wasn't until November. And the question I ask is, at what point will we stop on this? If a pension, a retirement pension, is given to a police officer with some 30 years of service, and after he gets the decision in May of 2007, then the pension board says, we want to open it up, how long will it take? Counsel, what do you make of your opponent's argument that the parameters had been gone beyond in terms of the awarding of the pension to your client? There was no misrepresentation by the village or anybody else. Everybody got, all the commanders received the same salary increase. It was just spaced differently over a period of time. And that was within the discretion of the village manager based upon the ordinances of the village. Let's make sure we got this correct. That if the plaintiff, if his salary increase or his whatever you want to describe it, had been, had the same starting date of May 2006 as the others, no pension increase would have benefited him. True? Because he had already been retired. Right? It appears so. And once again, you have to keep in mind that when this salary study matter came up, Kosak was very concerned. He went to the pension board. He went to the manager. He basically said, if I retire as of January 1st of 2007, and that salary increase goes into effect, will it or will it not be made retroactive? He was assured by the pension board attorney, Mr. Rima, who spoke here today, that it would be. There has been no misrepresentation. There has been no fraud on this matter. And if this court were to say you accept the characterization that there's been, of the three individuals that were to benefit from the study, that there's been a different treatment of the plaintiff versus the other two? It all depends upon your definition of the word treatment. Or perhaps is? Everybody received the same salary increase. It was spaced out over a period of time because the manager said in equity, in all fairness, because this study has been dragging on for quite a while, I'm going to give Kosak's immediately, and the other fellows will catch up over a period of approximately a year. When you say that the pension board could have delayed its decision, Mr. Kosak could have delayed his decision to retire until the matter was resolved in clear manner. He could have delayed it until the study came back, and then he would have known exactly where he stood. He could have, but then he went the extra step of saying to the pension board, if I retire and we have this NIU study, and this study gets implemented, will it be applied to my retirement pension? And the answer from the pension board was yes. The answer from the village manager was yes. And only one of those two really controlled that decision, and that was the village manager and not the pension board. True? The village manager decided that it would be effective January 1, 2006, as opposed to May 2006 for the other two. And yes, and he had that discretion because, once again, And the question is whether he had that obligation to inform the board of his exercise of discretion in such a manner. I don't believe he had the obligation because now you get into the separation of powers of a village manager, government, and the pension board. But certainly, once again, what it came down to was the lack of due diligence by the pension board in the sense of finding out what the devil is going on here. Why didn't they contact the manager? Why didn't they delay the hearing? And I have to say that I am a little distressed by your placing the burden on the pension board to find out more from the village manager when it's the village manager that has that information and in the course of his carrying out his responsibilities should pass it on to the pension board. Well, that's a theoretical philosophical point as opposed to the statutory obligation of the pension board, and which comes first, the horse or the cart, or the cart or the horse? I guess that's for us to decide, huh? It is, sir. All right. So the village manager did communicate with another member of the board, didn't he, in terms of what this pension was going to be? Wasn't there another village manager that he conferred with? No. My understanding is it was COSAC. The COSAC contacts the manager, contacts the pension board. Then there's an exchange of e-mails, and all the information is presented. That's my recollection. The village treasurer, as I said, you may be confusing this with the village treasurer who gave information to the pension board some five days before, and once again, the pension board didn't go any further with that information. And I might also add at this point that at that meeting in May where they increased my client's retirement pension retroactive, there were two other problems with pensions, and they delayed acting on that to get additional information from those individuals, but they didn't delay in any way Joseph COSAC's. And if I may just raise this one point, what triggered this? What starts this? What starts this is notification that the pension board is going to meet on a certain date regarding, and this is in November, dealing with my client's. Who is trustee Brian Mayer? He is a trustee of the village, not of the pension board, and he is the liaison. He's the liaison between the village board of trustees and the pension board. And that's the one who the village manager communicated with? That is correct. I'm sorry. He's the liaison between the pension board. The village board of trustees and the pension board. Yes, Justice. I started to say about what triggered this, and I want to get this point across. My client receives notification that the pension board is going to meet in November to possibly act on his retirement pension. That is November of 2006 or 2005? 2006. Just a moment. If I may. I get loused up on the dates. If I may. 2006. Okay. So the pension board, I go to the meeting, and the pension board makes a decision right then and there to stop the retirement pension of my client. But they didn't do it, though. They tried to do it, and what prevented them from doing it was the village refused to modify the checks. But my point is this. In the Koskowski case, which the court is aware of, they mentioned the case of Wendell v. City of Moline, or the Moline Police Pension Board, and not only did they stop it or tried to stop it, but they also said the burden was upon Kosak to prove that he was right in getting his pension, and that flies in the face of Wendell. It's because of that action the handwriting was on the wall, as far as I was concerned. I had no choice but to go into court. I thought properly under administrative review. Eventually we go the route of injunction, and here we are. And to send this back to the pension board after that type of outrageous conduct I think is absurd, particularly in light of the fact that Rosler, the facts of Rosler are extremely similar to the facts of this case. What of this? What if we were to, this is all hypothetical, what if we were to dissolve the permanent injunction and simply say there's no reason to allow this permanent injunction to remain and let things proceed as they may? The board can either act or not act, and if the board acts then, you know, the matters proceed under the administrative review law. And my answer to that is the 35-day time limitation. May was the decision of the pension board. They had 35 days from May to file a complaint for administrative review. They didn't do it, and that is concrete. It's granted however way you want to pour it. And that would be your motion in the circuit court of Cook County, that would be your motion in the circuit court of Cook County to end whatever review might arise from subsequent action by the pension board, true? And that would be the end. Or at the very least we would flesh out what time period applies to the section of 3-144.2 as to whether or not that must occur, the discovery of such misrepresentation, fraud or error must occur within 35 days. Well, I mention about asking this court to in effect rewrite the statute. In the circuit court decision, the circuit court make reference to the Supreme Court of Illinois case of Miller v. Lockett, 98 Illinois 2nd 478 at 483, which stands obviously for the proposition that if a judicial decision has been on the books for a number of years so to speak and the legislature has not taken any action to correct it, therefore that's in effect affirming the court. So I rely upon as did the circuit court the Miller case. Well, just so it's clear, no one is asking us to overrule Rossler and there's really no reason for us to overrule Rossler with or without its arithmetical error characterization. The end result was probably the right result. And no one questions that. In Rossler? In Rossler. And hopefully the court will... And in Justice Hoffman's case. I can't pronounce the name. In Justice Hoffman's case. Let me see if there's anything else. One last point if I may. This business about the ordinances. The ordinance that we're talking about here which controls is an ordinance that ran from May 1st of 2006 to April 30th of 2007. The NIU study was in effect adopted April of 2006. Based upon that, the decision was made by the manager to dealing with the salary of COSAC and the other commanders. And as a result of that, in May of 2006, the pension board made its decision and that's why we're here. And if I may just have a moment to see if I left out anything else. I have an awful lot of things written down. That's all the points I have unless the court has any questions. That's all we have for you, counsel. Thank you. Thank you, Justices. Brief rebuttal. Very quick. You asked... Someone asked a very good question. What's the time frame? What's the time horizon here? I think if you look at Section 3144.2, what the statute says is the amount of any overpayment. It doesn't say any overpayment not discovered within 35 days. How much overpayment would there be if we applied the 35-day rule to that section? 35 days worth, right? At most? It could. Yes. And again, I don't think I have the case. We addressed in the brief. But as I recall statutory construction, if you have a specific versus a general provision, which the Illinois Code of Civil Procedure is, and a pension code, which is specific, it's the specific that controls. And specifically, we're talking about 3144.2. What is the complaint if, as your opponent has said, that within the space of a year, the other commanders would be receiving the same amount of money as the plaintiff? Well, what I think is on the back of the taxpayers, the plaintiff was singled out and treated differently when he shouldn't have been. And the law, the statute, municipal law as I understand it, is the village ordinance is the controlling document. The village ordinance, the pay plan, was violated. An employee of, what was it, 30 years? Thirty-some years. That he received the maximum that he could as a result of these new provisions and that other commanders who stayed there for another year could have maxed out at that same level, that somehow that's unfair? Yes. They could have gotten there eventually. Remember, there was a salary range. What I am saying to you is, number one, that I believe it is improper for the village manager to exceed the village ordinance. And the ordinance is the salary document and it sets range. What the village manager did here, unbeknownst to the pension board until sometime later, is exceed the salary range for the given year. He violated the document that controls who gets salary. He violated the municipality's own document. That's not salary. That's something that's extraordinary. He was not entitled to it. As far as the other commanders, when the commanders were getting their raises or evaluations, they received the range. I don't know that they all got that same amount of money. I don't know that. I don't recall. I also want to say, remember here, the board had a fiduciary duty and the board did everything it could reasonably to ask and try to ascertain the correct information. That salary study was not given to the board until after October. In fact, I believe the deposition testimony was that the salary study by NIU had not actually been formally adopted by the board. It was used to construct the salary ordinance. I believe that's the case. I'm sorry, Your Honor. I was just going to say, the one thing that disturbed me was that when you say the board had done everything that they could, it was that prior to that May 06 meeting in which they confirmed Mr. Kozak's pension, the treasurer, Mr. Bettenhausen, had talked to Mr. O'Hearn from the board. I don't know what his position was. And it confirmed that they were going to give him a certain amount of money. Mr. Bettenhausen was asked for further documentation. He said he didn't have any. And it was his belief that all the other commanders, I think there were three, we keep saying two, but I think there were three other commanders who were also getting a raise, but he didn't know how much they were getting. And the board accepted that record. And they did. And just acted on it. And I guess what's the old adage that no good deed goes unpunished? Exactly. Because you were asked the question, somebody asked counsel the question, well, you know, what would have happened? The board wanted and believed that it had made all the proper inquiries and had as much information to give the commander a pension. If not, if they hadn't acted, the commander to this day, if we had dragged it on, wouldn't be receiving his pension. Now, that's not fair to him. He should be entitled to the amount that he's entitled to by law. No more and no less. I thought he was getting a pension from January of 06 to May of 06. He was getting it based upon the $85,000 salary. He was. And then it was changed in May to the $94,000. Yes, Justice. It was changed based on incomplete information given to the pension board. You know, sure, in hindsight, what's going to happen here is boards aren't going to grant pensions. They're going to have to do subpoenas and hold hearings. And it's a shame because up until this point, they followed the procedure. Mr. O'Hearn or Officer O'Hearn, the president of the board, did everything he reasonably could to try to get that information. And then the board is faced with a choice. Put it off. Wait. They tried to do the right thing. Again, no good deed goes unpunished. And now we have a situation where perhaps hundreds of thousands of dollars will be overpaid. We don't think that that's what the law intended. We don't think that's what was contemplated here. And we believe that the remedy should be a vacation of the permanent injunction and a remand. We'll develop the facts. And if the five members of the board, it could be new board members, decide that there's no fraud, misrepresentation, or error, Commander Klosik gets what he's entitled, game over. Thank you. Appreciate your time. Counsel, this matter will be taken under advisement. This court is adjourned.